**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| MARIA LOPEZ, | ) |
| Plaintiff, | ) Index No. **26-3899** |
| | ) |
| v. | ) **COMPLAINT** |
| | ) |
| THE CENTURY ASSOCIATION, | ) |
| | ) |
| Defendant. | ) |

When a peeping tom housekeeper spied on Plaintiff Maria Lopez in the women's locker room, Defendant the Century Association took no disciplinary action whatsoever, emboldening the perpetrator to aggressively retaliate against Mrs. Lopez for reporting his sexual misconduct. This is a straightforward case of sexual harassment and retaliation that must be swiftly remedied.

Plaintiff Maria Lopez ("Plaintiff" or "Mrs. Lopez), by and through her undersigned counsel Josh Bernstein P.C., alleges as precedes and follows:

## Nature of the Suit: Sexual Harassment and Retaliation

1. Plaintiff brings suit under the New York City Human Rights Law, New York City Administrative Code § 8-101 et. seq., for sexual harassment and retaliation

## The Parties

2. Plaintiff Maria Lopez is an adult resident of Bergen County, New Jersey.

3. Defendant the Century Association ("Century Association") is a not-for-profit corporation located in New York, NY.

## Jurisdiction and Venue

4. This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1332, as the parties are diverse and the amount in controversy exceeds $75,000.

5. Venue is proper in this District pursuant to 28 U.S.C. § 1391(b)(1-2).

## Background

6. The Century Association is a private social, arts, and dining club made up of more than two thousand authors, artists, and amateurs of arts of letters and fine arts, located in a landmarked McKim, Mead & White building on 43rd Street and 5th Avenue. The Century Association employs well-over fifty employees.

7. Mrs. Lopez began working for the Century Association as a bartender in November 2018. She excelled in this role over her entire tenure with Defendant.

## Mrs. Lopez is Victimized by a Peeping Tom

8. At 1:52 P.M. on October 20, 2025, Anthony Vargas – a housekeeper and union delegate – followed Mrs. Lopez as she walked down the hallway and entered the women's locker room. Anthony Vargas concealed his body behind the locker room door while craning his neck around it to leer into the locker room at Mrs. Lopez as she began to change clothes.

9. Mrs. Lopez happened to turn around and was shocked to see Mr. Vargas peeping at her. Caught red-handed, Anthony Vargas's face contorted into a grimace of shock and shame, eyes downcast. In a panicked attempt to cover-up, Anthony Vargas proceeded to enter the women's locker room, turn on a vacuum, and pretend to clean for less than 30 second before turning around and leaving.

## Mrs. Lopez Reports Anthony Vargas

10. Mrs. Lopez immediately reported the incident to HR representative Benjamin Lau, who quickly responded that he was still in Spain and would not return to work until the following week, and directed Mrs. Lopez to contact general manager Christian Pottoff.

11. The following day, Mrs. Lopez was interviewed by HR representative ßElizabeth Ortiz. Ms. Ortiz took Mrs. Lopez's statement and told her that she would interview Anthony Vargas and then follow-up with HR.

**Anthony Vargas Immediately Begins Retaliating Against Mrs. Lopez**

12. On the afternoon of October 22, 2025, two days after Mrs. Lopez reported the incident, and one day after she was interviewed in connection with her complaint, Anthony Vargas came up to the bar and began acting aggressively and disrespectfully towards Mrs. Lopez. Mrs. Lopez presciently recorded this incident.

13. While staring at Mrs. Lopez, who has grey hair, he asked another bartender, Rafique, what kind of hair dye he should buy. Rafique responded: "I don't know anything about it man". Anthony Vargas continued: "Look at him, but just look at him, give me an idea" while pointing at Mrs. Lopez, doubling down on his insult by intentionally misgendering Mrs. Lopez. Chuckling at his own insults, Anthony Vargas then told Rafique that he was going to buy a wig for Mrs. Lopez, again referring to Mrs. Lopez as "him". Upon information and belief, Anthony Vargas had been interviewed by HR about Mrs. Lopez's complaint earlier in the day. He was now loudly and publicly insulting Mrs. Lopez's appearance as if to retort: "I wouldn't perv on you, you're ugly!"

14. Rafique then told Anthony Vargas to "go away" from the bar, and Anthony Vargas responded: "Take a look at the camera, we haven't touched anything." The reason Anthony Vargas immediately started claiming he did not take anything in response to Rafique's directive for him to leave the bar is because Anthony Vargas is an open and notorious workplace lout who drinks on the job and is known for barreling behind the bar announcing: "I'm thirsty, I'm

3

thirsty!" before stealing alcohol. Upon information and belief, Anthony Vargas was previously suspended for stealing a bottle of wine that was caught on camera.

15. Over the following weeks, Anthony Vargas repeatedly came up to Mrs. Lopez during her lunch breaks and while she was working the bar acting in a loud and aggressive fashion, announcing: "There's human cameras everywhere, don't do anything, they'll report you!", and "Make sure the human cameras are off!". Anthony Vargas made belligerent comments about "human cameras" to Mrs. Lopez's face 4-6 times during this time-period, an overt reference to Mrs. Lopez's complaint.

16. Likewise, on November 4, 2025, Anthony Vargas acted in a belligerent manner towards Mrs. Lopez at the billiards bar, making comments about "anger management" directed towards her. Mrs. Lopez has retained a recording of this incident as well.

### Human Resources Takes No Remedial Action

17. Shortly after reporting the incident, Mrs. Lopez learned that HR stated nothing could be done because the incident "happened too fast" and there were no cameras in the immediate area. This made Mrs. Lopez feel unsafe, unsupported, and dismissed.

18. On October 27, 2025, Mrs. Lopez wrote again to Benjamin Lau, following-up on her complaint and asking what interim measures The Century Association would be taking during the pendency of the investigation.

19. On October 29, 2025, Benjamin Lau emailed Mrs. Lopez explaining that he had completed his investigation and would like to meet with her the following day at 4:00 P.M.. Mr. Lau stated that: "In the interim, assignment has been re-assigned in the area".

29. Mrs. Lopez arrived at HR at 4:00 P.M., only to be told that the meeting was being postponed because Elizabeth Ortiz could not attend. Mrs. Lopez then sent a text message to Mr. Lau at 4:08

4

P.M. stating that due to the ongoing stress related to the incident and unresolved situation, she did not feel comfortable remaining at work, and requested leave for the remainder of the day. Mrs. Lopez also took leave the following day.

30. On November 3, 2025, human resources emailed Mrs. Lopez to schedule a meeting with Mr. Lau and Ms. Ortiz on November 4, 2025 at 3:00 P.M.. At 5:05 P.M. on November 3rd, Mrs. Lopez emailed Mr. Lau, following-up on her complaint, and explaining that Anthony Vargas continued to make loud and aggressive comments aimed at her in the lunchroom during breaks. Mrs. Lopez had previously verbally reported Anthony Vargas's retaliatory conduct.

### Anthony Vargas's Father Saunters into the Women's Locker Room While Mrs. Lopez is Undressed

31. On November 4, 2025, Mrs. Lopez arrived at work at approximately 9:30 A.M.. While changing in the locker room, half-naked from the waist down, Antonio Vargas – Anthony Vargas's father and a maintenance worker at the club – walked into the women's locker room.

32. When Mrs. Lopez noticed Antonio Vargas's hand opening the locker room door, she yelled multiple times: "There's someone here!", but Antonio Vargas nonetheless entered the locker room and saw Mrs. Lopez half-naked. After seeing Mrs. Lopez, Antonio Vargas closed the door and left. Mrs. Lopez felt humiliated, violated, and unsafe all over again.

### HR Minimizes the Most Recent Incident and Closes the Investigation

33. Mrs. Lopez immediately went to the HR office and reported what had just occurred. Mr. Lau was initially shocked, but then shifted the conversation to Mrs. Lopez's previous email about Anthony Vargas's retaliation, stating that he was reviewing lunchroom footage and explaining that he was still investigating. Mr. Lau minimized the incident Mrs. Lopez had just reported, attempting to make Mrs. Lopez believe it was unintentional, making Mrs. Lopez feel guilty instead of supported when she was the one who had just been violated.

5

34. Later that day, Mrs. Lopez attended the scheduled 3:00 P.M. meeting with Mr. Lau and Elizabeth Ortiz. Mrs. Lopez was told that there was no proof corroborating her allegations, and that the investigation was closed. No disciplinary action was taken against Anthony Vargas.

35. Mrs. Lopez ended up leaving work early subsequent to the meeting with HR, as she was in a devastated, emotionally vulnerable state. She was later reprimanded for leaving early, despite informing Ms. Ortiz, who told Mrs. Lopez she would inform her manager of the early departure.

36. Mrs. Lopez commenced leave the following day.

## First Cause of Action:
## Sexual Harassment Under the New York City Human Rights Law

37. Plaintiff repeats and realleges the allegations contained in paragraphs 1-36 inclusive as if they were fully set forth herein.

38. The aforesaid actions of the Defendant constitute a violation of the New York City Human Rights Law, New York City Administrative Code § 8-101 et. seq..

39. As a result of Defendant's violation of the New York City Human Rights Law, Plaintiff has suffered and continues to suffer economic losses, mental anguish, pain and suffering and other damages. Plaintiff is also entitled to and demands an award of attorney's fees, costs, interest and, because Defendants' actions were willfully or wantonly negligent or reckless of Plaintiff's rights, or consciously disregarded Plaintiff's rights, punitive damages.

## Second Cause of Action:
## Retaliation Under the New York City Human Rights Law

40. Plaintiff repeats and realleges the allegations contained in paragraphs 1-36 inclusive as if they were fully set forth herein.

41. The aforesaid actions of the Defendant constitute a violation of the New York City Human Rights Law, New York City Administrative Code § 8-101 et. seq..

6

42. As a result of Defendant's violation of the New York City Human Rights Law, Plaintiff has suffered and continues to suffer economic losses, mental anguish, pain and suffering and other damages. Plaintiff is also entitled to and demands an award of attorney's fees, costs, interest and, because Defendants' actions were willfully or wantonly negligent or reckless of Plaintiff's rights, or consciously disregarded Plaintiff's rights, punitive damages.

## DEMAND FOR TRIAL BY JURY

Pursuant to Rule 38(b) of the Federal Rules of Civil Procedure, Plaintiff demands a trial by jury on all questions of fact raised in the Complaint.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff prays for the following relief: Judgment against Defendant awarding damages in an amount to be determined at trial including economic damages, compensatory damages, treble and/or liquidated damages, punitive damages, penalties, costs, interest, attorney's fees, and an award of such other and further relief as the Court deems just and proper.

Dated: May 11, 2026                                    Josh Bernstein, P.C.
                                                        *Counsel for Plaintiff*

                                               By:_____/s/_____
                                                    Joshua Alexander Bernstein

                                                    447 Broadway, 2nd Fl.
                                                    New York, NY 10013
                                                    (646) 308-1515
                                                    jbernstein@jbernsteinpc.com

7